WILLIAMS, Senior Circuit Judge,
concurring in part and concurring in the judgment:
I agree with the majority’s decision to affirm the district court’s denial of Al Bihani’s petition for a writ of habeas corpus. I take a slightly different view of the central substantive issue in this case, and a significantly different view as to the necessity of reaching any of Al Bihani’s procedural arguments. For purposes of both my analysis and the majority’s, the petitioner has conceded facts that render his detention lawful — thereby obviating any *43 need to discuss the constitutionality of the district court’s factfinding process.
The petitioner’s detention is legally permissible by virtue of facts that he himself has conceded.
He argues that he cannot be detained on the basis of his relationship with the 55th Brigade, for two reasons. First, Al Bihani says, the Authorization for the Use of Military Force, Pub.L. 107-402(a) (2001) (“AUMF”) — properly interpreted in light of applicable law-of-war principles — cannot be read to have authorized the U.S. government to conduct hostilities against the 55th Brigade. Second, even if the 55th Brigade were the kind of organization targeted by the AUMF, he himself was not a part of the 55th Brigade, nor was his involvement with the unit enough to subject him to ■ the lawful exercise of U.S. force. Neither argument is persuasive.
The AUMF authorizes the President
to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.
Pub.L. 107-402(a). Al Bihani acknowledges that both before and after 9/11, the 55th Brigade fought alongside the Taliban in Afghanistan in its fight against the Northern Alliance, Petitioner-Appellant’s Unclassified Br. at 3-4, 33, and he cannot reasonably dispute that the Taliban “harbor-ed” al Qaeda, which committed the 9/11 attacks, see Boumediene v. Bush,, 553 U.S. 723, 128 S.Ct. 2229, 2241, 171 L.Ed.2d 41 (2008).
Noting, however, that under Hamdi v. Rumsfeld, 542 U.S. 507, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004), the laws of wax-have — even in the government’s view — a role to play in the interpretation of the AUMF’s grant of authority, Appellees’ Unclassified Br. at 23 (citing 542 U.S. at 521, 124 S.Ct. 2633), Al Bihani says that under recognized principles of “co-belligerency” and the law of neutrality the United States would not have been permitted in the weeks after 9/11 to take hostile action against the 55th Brigade — which had conducted hostilities against a soon-to-be U.S. ally, the Northern Alliance, but not against the United States itself. In support of this position he cites a number of authorities suggesting that pursuant to the laws of war, a state’s merely being an ally of a party to a conflict does not, without more, allow that state to take aggressive action against its ally’s adverse parties. Unclassified Reply Br. at 12 (citing inter alia Parry and G)"a,nt Encyclopaedic Dictionanj of International Law 84 (John P. Gx-ant & J. Craig Barker eds., 2d ed. 2004)).
But the AUMF clearly authorized the President to attack the 55th Brigade. By its terms, the AUMF allows force against “organizations” that “harbored” those who were responsible for the 9/11 attacks. The 55th Brigade fought to preserve the Taliban regime in Afghanistan even as the Taliban was harboring al Qaeda in Afghanistan. This makes the 55th Brigade, itself, an organization that “harbored” al Qaeda within the meaning of the AUMF.
No contrary interpretation of the AUMF is plausible. If the AUMF did not authorize U.S. force against an organization fighting in Afghanistan to stabilize and protect the Taliban’s power after 9/11, then the American military campaign that started on October 7, 2001, was illegal— under domestic law — to the extent that it targeted not just Taliban forces fighting the Northern Alliance, but also 55th Bri *44 gade forces fighting with the Taliban against the Northern Alliance. Whatever the appropriate role of the laws of war in determining what powers the President derived from the AUMF, it cannot be to render unlawful the President’s use of force in Afghanistan in the fall of 2001— which the Supreme Court has repeatedly acknowledged was permitted under the AUMF. See Boumediene, 128 S.Ct. at 2240-41. Under the best reading of the AUMF, then, Congress authorized that military campaign, aimed at removing the Taliban from the seat of government and minimizing its ongoing influence in Afghanistan, including the attacks on ancillary forces aiding the Taliban.
Because the 55th Brigade was properly the target of U.S. force in Afghanistan pursuant to the AUMF, it follows that members of the 55th Brigade taken into custody, on the battlefield in Afghanistan in the fall of 2001 may be detained “for the duration of the particular conflict in which they were captured.” See id. at 2241. In addition to detention based on a person’s having been “part of’ an AUMF-targeted organization, the government asserts that Congress authorized force against, and therefore detention of, someone who provided “substantial support” to such a group. Appellees’ Unclassified Br. at 16.
A1 Bihani argues, by contrast, that he was not a part of the 55th Brigade at all, but merely “a cook’s assistant ... near the front lines.” Petitioner-Appellant’s Unclassified Br. at 31. To be sure, the people he was cooking for were the members of the 55th Brigade, as his counsel acknowledged at oral argument. Oral Argument Tr. at 4 (Oct. 2, 2009) (referencing “the brigade for which he cooked”). A1 Bihani maintains, though, that notwithstanding his cooking, and his having been provided a weapon, Petitioner-Appellant’s Unclassified Br. at 4, he was effectively a “civilian contractor” rather than a bona fide member of the brigade, id. at 32. In support of this contention, he cites principally a document produced by the International Committee of the Red Cross (ICRC), entitled Intei’pretive Guidance on the Notion of Direct Participation in Hostilities Under International Humanitarian Law. That work, in his view, says that “individuals who accompany ... armed forces and provide food” are properly viewed as civilians. Unclassified Reply Br. at 17. As a result, such food-providers can’t permissibly be detained unless they themselves take hostile acts directly against their would-be detainers. Id.
The question whether a person was a “part of’ an informal, non-state military organization like the 55th Brigade overlaps significantly with the question whether that person “supported” or indeed “substantially” or “materially” supported the organization. Both these terms are highly elastic, ranging from core membership and support to vague affiliation and cheerleading. But whatever their range, it seems hard to imagine how someone could be shown to be a member of such a group (for purposes of detention under the AUMF) without evidence that he also significantly supported it (for those purposes).
Regardless, however, of whether the operative inquiry probes membership in the unit, or support of the unit, or substantial or material support of the unit, or some combination of these considerations, Al Bihani’s involvement with the 55th Brigade— cooking for and carrying arms provided by the 55th Brigade, and doing so near the front lines of hostilities between the Taliban and the Northern Alliance — was ample to make him properly subject to U.S. force directed at the 55th Brigade pursuant to the AUMF. Purely on the basis of these activities, he was sufficiently enmeshed with the brigade to fall into the category of persons whom the AUMF al *45 lowed the U.S. military to target.[1] The alternative conclusion — which would have it that the President was authorized to use force against the fighting members of the 55th Brigade on the front lines in northern Afghanistan, but not against the armed people who enabled them to fight — is senseless. Because Al Bihani was effectively part of the 55th Brigade, and a sufficient supporter of same, his detention for the duration of the hostilities in which he was captured is lawful. See Boumediene, 128 S.Ct. at 2241 (citing Hamdi, opinions of O’Connor, J., and Thomas, J.).
The ICRC document does not alter this analysis. The work itself explicitly disclaims that it should be read to have the force of law. “[W]hile reflecting the ICRC’s views,” the authors write, “the Interpretive Guidance is not and cannot be a text of a legally binding nature.” Interpretive Guidance 6. Even to the extent that A1 Bihani’s reading of the Guidance is correct, then, the best he can do is suggest that we should follow it on the basis of its persuasive force. As against the binding language of the AUMF and its necessary implications, however, that force is insubstantial.
Within the portion of the opinion addressing the petitioner’s substantive argument that his activities in Afghanistan do not put him in the class of people whom the President may detain pursuant to the AUMF, the majority unnecessarily addresses a number of other points. Most notable is the paragraph that begins “Before considering these arguments in detail,” and that reaches the conclusion that “the premise that the war powers granted by the AUMF and other statutes are limited by the international laws of war ... is mistaken.” See Maj. Op. at 871. The paragraph appears hard to square with the approach that the Supreme Court took in Hamdi. See 542 U.S. at 521, 124 S.Ct. 2633 (O’Connor, J.) (plurality opinion) (“[W]e understand Congress’ grant of authority for the use of ‘necessary and appropriate force’ to include the authority to detain for the duration of the relevant conflict, and our understanding is based on longstanding law-of-war principles.”); id. at 548-49, 124 S.Ct. 2633 (Souter, J., opinion concurring in part and dissenting in part) (advocating a more substantial role for the laws of war in interpretations of the President’s authority under the AUMF). In any event, there is no need for the court’s pronouncements, divorced from application to any particular argument. Curiously, the majority’s dictum goes well beyond what even the government has argued in this case. See Appellees’ Unclassified Br. at 23 (“The authority conferred by the AUMF is informed by the laws of war.”).
Because the petitioner’s detention is lawful by virtue of facts that he has conceded — a conclusion that the majority seems not to dispute — the majority’s analysis of the constitutionality of the procedures the district court used (i.e., Maj. Op., Section II B) is unnecessary. Nothing in this case turns on the questions whether “preponderance of the evidence” is a constitutionally permissible standard of proof *46 in Guantanamo detainees’ habeas proceedings, whether the district court’s approach to the admission of hearsay evidence is consistent with the minimum requirements of the Suspension Clause as the Supreme Court construed it in Boumediene, 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41, or whether petitioners in Al Bihani’s circumstance do or don’t enjoy only a “limited procedural entitlement ... as a general matter,” Maj. Op. at 878. These matters are analytically irrelevant to the outcome of this appeal, since the facts that Al Bihani says are correct readily yield a ruling that his detention is legally permissible.
I join the majority’s opinion to the extent it is consistent with the preceding arguments and observations.

. While Al Bihani's concessions put him squarely among persons who may be lawfully detained, he has not in fact conceded that the 55th Brigade was commanded by A1 Qaeda personnel. See Maj. Op. at 872 (quoting Al Bihani’s brief for the proposition that the 55th was "aided, or even, at times, commanded, by al-Qaeda members."). The phrase is in fact quite clearly part of a contingent argument ("Even if I lose on proposition A, I win on proposition B.”): “Rather, the 55th, whether it was aided, or even, at times, commanded, by al-Qaeda members, was focused in its mission to fight frontal military operations against the Northern Alliance.” Petitioner-Appellant's Unclassified Br. at 33.